UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:
                                                            Bankruptcy Case No. 15-21393
      Norita J. Brooks,                            Chapter 13

                Debtor.

_____

**DECISION AND ORDER**
**DENYING DEBTOR'S MOTION TO STRIP-DOWN MORTGAGE**
**UNDER 11 U.S.C. § 1322(b)(2)**

PAUL R. WARREN, United States Bankruptcy Judge

      The Chapter 13 Debtor, Norita J. Brooks ("Brooks") has moved, under 11 U.S.C. § 506(a), to have the Court determine the value of her multi-family residence at 160 Seneca Parkway, Rochester, New York ("Property"). Wells Fargo Bank, N.A. ("Wells Fargo") holds a mortgage on the Property with an outstanding balance due of $300,476. Brooks also moves—and this is her ultimate goal—to strip-down the Wells Fargo mortgage under 11 U.S.C. § 1322(b)(2), so as to limit the amount of the secured mortgage claim to the alleged value of the Property. Brooks asserts that the protections provided for the holders of secured claims under 11 U.S.C. § 1322(b)(2) do not extend to claims secured by real property, on which there sits a *multi-family* home, within which is Brooks's principal residence and two apartment units. In opposition, Wells Fargo urges the Court to find that Brooks's strip-down attempt is prohibited by 11 U.S.C. § 1322(b)(2). After careful consideration of the record, the arguments of counsel, and the substantial body of conflicting case law—falling into three distinct camps—the Court holds that the mortgage secured by a lien on Brooks's multi-family home, that is also her principal residence, is protected from being stripped-down by operation of 11 U.S.C. § 1322(b)(2).

Brooks's motion to strip-down the mortgage lien is, under 11 U.S.C. § 1322(b)(2), in all respects **DENIED**. The remainder of the motion, attempting to value the Property under 11 U.S.C. § 506(a), is not ripe for determination and is not supported by any reliable evidence of value—that request is **DENIED** without prejudice.

# I.

# JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). This decision constitutes the Court's findings of fact and conclusions of law, to the extent required by Rule 7052 FRBP.

# II.

# FINDINGS OF FACT

On October 30, 1998, Brooks and her husband purchased the Property, on which there sits a 5,252 square foot house (ECF No. 21, Exhibit B; ECF No. 37). The house is a multi-family dwelling, divided into a 3,500 square foot "owner's unit" and two modest apartment units (ECF No. 21, Exhibit B). The Property has been Brooks's principal residence since 1998 (ECF No. 36 at 2). A mortgage on the Property (now held by Wells Fargo) was recorded on November 2, 1998, securing a debt in the original amount of $150,913 (ECF No. 21, Exhibit C). The mortgage includes a provision requiring Brooks to occupy the Property as her principal residence for at least one year (*Id.*, Exhibit C ¶ 5). Also included in the mortgage is a boilerplate assignment of rents (but not leases) (*Id.*, Exhibit C ¶ 17). Fire damaged the home in March 2015, resulting in fire, water, and smoke damage to both rental units (ECF No. 37 ¶ 13). It

2

Case 2-15-21393-PRW    Doc 41    Filed 04/15/16    Entered 04/15/16 13:05:02    Desc Main
Document    Page 2 of 12

appears that the Property was in a state of serious structural disrepair long before the fire (*Id.* ¶¶ 4, 10, 17). There is no Certificate of Occupancy for the Property—Brooks admitted that no Certificate of Occupancy has been in place since 2007 (ECF No. 21, Exhibit B; ECF No. 37). There is no dispute that the two apartment units were not occupied by tenants, nor could they be because of their damaged condition, as of the date of the petition (ECF No. 21, Exhibit B; ECF No. 37).

In 2007, Wells Fargo commenced a foreclosure action against the Property. Brooks filed a Chapter 13 petition (her first) on March 4, 2009, to stop the foreclosure sale from proceeding (*In re Brooks*, No. 2-09-20482 (JCN), ECF No. 1). A review of Brooks's filings in both bankruptcy cases reveals that a foreclosure proceeding between Brooks and Wells Fargo has been ongoing for at least seven years at the time she filed the petition (her second) in this case (Case No. 2-09-20482, ECF No. 1, Statement of Financial Affairs; Case No. 2-15-21393, ECF No. 1, Statement of Financial Affairs ¶ 4). During those seven years, the mortgage claim has increased from (approximately) $150,000 to $300,000, and (according to Brooks) the value of the Property has dropped from (approximately) $174,000 to $70,000 (Case No. 2-09-20482, ECF No. 1, Schedule A; Case No. 2-15-21393, ECF No. 1, Schedules A and B). Wells Fargo was granted a judgment of foreclosure by the State Court in 2015. The foreclosure sale was scheduled for mid-December 2015. On December 11, 2015, Brooks filed a Chapter 13 petition to stop the foreclosure sale (ECF No. 1). The Property is the only real estate in which Brooks has an ownership interest (ECF No. 30, Part 1).

Brooks amended her schedules on March 22, 2016, to disclose the fact that she has been holding a check from her insurance carrier in the amount of $85,000 (ECF Nos. 30 and 37). It appears that Brooks had that check in her possession for a considerable period of time before she

3

Case 2-15-21393-PRW    Doc 41    Filed 04/15/16    Entered 04/15/16 13:05:02    Desc Main
Document    Page 3 of 12

filed this Chapter 13 case (ECF No. 37 ¶¶ 15-17). The check is jointly payable to Brooks and Wells Fargo (and others) and would appear to be an asset of the bankruptcy estate under 11 U.S.C. § 541(a) (*Id.* ¶ 14).[1] Both Brooks and Wells Fargo agree that the value of the Property would change (presumably upward) if repairs were completed (ECF Nos. 35 and 36). Neither party has ventured to guess what the Property might be worth if $85,000 worth of repairs were performed—certainly Brooks's valuation "expert" offered no opinion on the matter (ECF No. 21, Exhibit B).

On December 18, 2015, Wells Fargo filed an Objection to Confirmation, asserting that the proposed plan improperly bifurcates its claim under the mortgage into secured and unsecured portions in violation of 11 U.S.C. § 1322(b)(2) (ECF No. 13). On March 4, 2016, Brooks filed the motion now before the Court—to value the Property under § 506(a) and to strip-down the secured claim of Wells Fargo under § 1322(b)(2) (ECF No. 21).

### III.

### DISCUSSION

A Chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence.*" 11 U.S.C. § 1322(b)(2) (emphasis added). The issue before the Court is whether the statutory protection given to secured creditors under § 1322(b)(2) applies to a security interest in

---

[1] Brooks's attorney admitted at oral argument that he was responsible for her delayed disclosure of the $85,000 check. If counsel was aware that the check was not listed in Brooks's schedules at the time that the strip-down/valuation motion was filed on March 4, 2016, the failure to inform the Court of that fact in the motion would be of great concern. Absent that information, the motion is inaccurate at best and misleading at worst.

4

real property that is a debtor's principal residence, if that residence happens to be a multi-family home with income potential.

Dozens of courts have wrestled with the issue of whether 11 U.S.C. § 1322(b)(2) prohibits strip-down of a secured claim on a debtor's principal residence, if the real property also hosts commercial activities—whether they be a tailor shop, a trucking business, or a multi-unit home with apartments to let. After nearly twenty years of judicial grappling, three distinct and triangularly-opposing camps have emerged among the federal courts. So much has been written by courts representing all three camps, explaining the rationale supporting each's answer to the question, that this Court can do little to add anything of value to the analysis. The Court will join one camp in answering the question without fanfare. And so, with a stiff upper lip, the Court today embarks on a quest, as have dozens of other courts, to attempt to determine how many angels can dance on the head of a pin.

Among the bankruptcy judges of the Western District of New York, three distinct and opposing approaches have been taken in answering the question. *See In re Brunson*, 201 B.R. 351 (Bankr. W.D.N.Y. 1996) (Kaplan, J.); *In re Kimbell*, 247 B.R. 35 (Bankr. W.D.N.Y. 2000) (Ninfo, J.); *In re Macaluso*, 254 B.R. 799 (Bankr. W.D.N.Y. 2000) (Bucki, J.). The motion by Brooks seems to suggest that this Division of the Court is bound by *Kimbell*, and if not bound, she invites this Court to ratify and adopt *Kimbell* and its progeny (ECF No. 21 ¶¶ 6-7; ECF No. 36). To be clear, this Court is not bound by *Kimbell*. *See, e.g.*, *In re Moore*, 441 B.R. 732, 738-39 (Bankr. N.D.N.Y. 2010) (citing *In re Ford*, 415 B.R. 51, 60-61 (Bankr. N.D.N.Y. 2009)) (holding "where there is not clear Second Circuit precedent and where lower courts are vehemently split on a single issue, it is critical for the bankruptcy court to independently interpret

the plain language of the Code"); *see also In re Dembrosky*, 235 B.R. 245 (Bankr. W.D.N.Y. 1999).

The question was first addressed by a bankruptcy judge in this District twenty years ago. *In re Brunson*, 201 B.R. 351 (Bankr. W.D.N.Y. 1996) (Kaplan, J.). In *Brunson*, the court adopted a case-by-case analysis to determine whether the anti-modification provision under § 1322(b)(2) applies to multi-family dwellings. The *Brunson* court looked at the totality of circumstances to determine whether, at the time of the transaction, the parties predominantly intended to enter into a transaction that was primarily residential or primarily commercial in nature. *Brunson*, 201 B.R. at 353; *see also Litton Loan Serv., LP v. Beamon*, 298 B.R. 508, 512 (N.D.N.Y. 2003); *In re Zaldivar*, 441 B.R. 389, 390 (Bankr. S.D. Fla. 2011). Courts adopting this approach favor it as being most consistent with Congressional intent in enacting § 1322(b)(2). *Brunson*, 201 B.R. at 353-54; *see also In re Zaldivar*, 441 B.R. at 390-91. And so the first camp was constructed using a case-by-case fact finding approach.

Four years after *Brunson*, the question was addressed by a second bankruptcy judge in this District. *See In re Kimbell*, 247 B.R. 35 (Bankr. W.D.N.Y. 2000) (Ninfo, J.). The *Kimbell* court rejected the fact-finding approach used in *Brunson* in favor of a "bright line rule." *Id.* at 37-38. *Kimbell* looked to Congressional intent to decide the issue, adopting the view of the First Circuit in *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1 (1st Cir. 1996). *Kimbell*, 247 B.R. at 37 n.4. While the *Kimbell* court did not indicate that it found the language of § 1322(b)(2) to be ambiguous, its reliance on Congressional intent would suggest so. In the wake of *Lomas* and *Kimbell*, the Third Circuit drew its own bright line and determined that the anti-modification protections of § 1322(b)(2) do not apply to real property that is a debtor's principal residence— and also includes rental units—reasoning that by using the word "is" in the statute ("real

6

Case 2-15-21393-PRW    Doc 41    Filed 04/15/16    Entered 04/15/16 13:05:02    Desc Main
Document      Page 6 of 12

property that *is* the debtor's principal residence"), "Congress *equated* the terms 'real property' and 'principal residence.'" *Scarborough v. Chase Manhattan Mortg. Corp.*, 461 F.3d 406, 411 (3rd Cir. 2006) (emphasis added). The *Scarborough* view has been adopted by a number of courts around the country. *See, e.g., In re Merritt*, No. 15-04282, 2016 U.S. Dist. LEXIS 34144, at *18-20 (E.D. Pa. Mar. 16, 2016); *In re Abrego*, 506 B.R. 509, 515-16 (Bankr. N.D. Ill. 2014); *Moore*, 441 B.R. at 739. The Third Circuit held that, for the anti-modification protection to apply, the real property securing the mortgage must be *only* the debtor's principal residence. *Scarborough*, 461 F.3d at 410-11. And so the second camp was constructed—permitting strip-down of a mortgage secured by a debtor's primary residence, if the property serves "even in part" as something other than exclusively the debtor's residence. *Id*. at 411.

A few months after *Kimbell*, the question was addressed by a third bankruptcy judge in this District. *See In re Macaluso*, 254 B.R. 799 (Bankr. W.D.N.Y. 2000) (Bucki, J.). The *Macaluso* court held that the anti-modification protections of § 1322(b)(2) do apply to a creditor's secured interest, so long as the *only collateral* is a single parcel of real estate, even if—in addition to being the debtor's principal residence—the real property serves many purposes or is divided into many units. *Id*. at 800. The *Macaluso* court focused its analysis on the word "only" in the statute and found that "only" modifies "secured." *Id*. "[O]nly" does not modify the phrase "debtor's principal residence." *Id*.; *see also Utzman v. Suntrust Mortg., Inc.*, No. 15-cv-04299-RS, 2016 U.S. Dist. LEXIS 26341, at *16 (N.D. Cal. Mar. 1, 2016) (reasoning that "the word 'only' is an adverb used to modify the word 'secured,' whereas the clause 'that is the debtor's principal residence' modifies the term, 'real property'"). In other words, as long as the

7

debtor principally resides in *some portion*[2] of the real property, the anti-modification protection under § 1322(b)(2) applies and the mortgage securing the claim cannot be stripped-down. *Macaluso*, 254 B.R. at 800. And so the third camp was constructed—not allowing the strip-down of a mortgage secured only by a single parcel of real estate, where the debtor has her principal residence on some part of the property, even if the property supports other uses or is occupied by other families.

This Court agrees with *Macaluso* that looking to the intent of Congress is not necessary in interpreting 11 U.S.C. § 1322(b)(2). Where statutory language is clear, it is unnecessary to look to the intent of the legislature. The task of construing a statute begins and ends with its language, if the language is clear. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Only where ambiguity exists in the text of a statute should the court look to other sources for determining its meaning. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236 n.3 (2010). "A Code provision is not rendered ambiguous merely because courts disagree as to its meaning." *In re Wages*, 479 B.R. 575, 582 (Bankr. D. Idaho 2012) (citing *Reswick v. Reswick*, (*In re Reswick*), 446 B.R. 362, 370 (B.A.P. 9th Cir. 2011)). The Court finds that the text of 11 U.S.C. § 1322(b)(2) is not ambiguous.

---

[2] Brooks makes brief mention of a case that criticizes *Macaluso* for the "strange outcomes" that could result from the application of the *Macaluso* bright line test (ECF No. 36). In *Zaldivar*, 441 B.R. 389 (Bankr. S.D. Fla. 2011) the court noted that application of the *Macaluso* approach could result in an outcome where, for example, a debtor maintains a small apartment in a large factory as his or her principal residence. *Zaldivar*, 441 B.R. at 390. This Court declines to focus on possible outcomes as a reason to abandon the plain text of the statute. "Even if the Court does not agree with all the possible outcomes produced by the statutory language, it is Congress, not this Court, that must repair any problems with the Code." *In re Wages*, 508 B.R. 161, 167 (B.A.P. 9th Cir. 2014) (citing *Lamie v. United States Tr.*, 540 U.S. 526, 541 (2004)). Since the issue was first raised in this District twenty years ago, the Court has yet to see the parade of horribles Brooks foretells.

8

The bright-line approach taken by the *Macaluso* court is most consistent with the plain language and text of § 1322(b)(2). Because this Court finds the language of § 1322(b)(2) to be unambiguous, it is not necessary to consider its legislative history or to engage in a policy-driven analysis. This Court declines Brooks's invitation to adopt the *Kimbell* analysis. Instead, the Court agrees with the *Macaluso* court's interpretation of § 1322(b)(2).

While the textual approach of the *Macaluso* court may represent a minority view, it is an emerging view. Faced with an attempt by a Chapter 11[3] debtor to strip-down a mortgage secured by eleven acres, on which the debtor maintained both a primary residence and a trucking business, the Bankruptcy Appellate Panel for the Ninth Circuit followed the textual analysis of *Macaluso* and affirmed the bankruptcy court in rejecting the attempted strip-down of the secured claim. *Wages v. J.P. Morgan Chase Bank, N.A. (In re Wages)*, 508 B.R. 161, 167 (B.A.P. 9th Cir. 2014), *aff'g*, 479 B.R. 575 (Bankr. D. Idaho 2012). The *Wages* court found that the plain language of the statutory prohibition against the modification of the rights of the holders of secured claims under § 1322(b)(2) has three distinct elements: "first, the security interest must be in real property; second, the real property must be the only security for the debt; and third, the real property must be the debtor's principal residence." *Id*. at 165.

Here, there is no dispute that Wells Fargo has a security interest in real property—the first *Wages* element has been met. As for the second *Wages* element, Brooks seems to suggest that because the mortgage included a boilerplate "assignment of rents," the Property was not *the*

---

[3] The language of 11 U.S.C. § 1123(b)(5) and § 1322(b)(2) is identical. Courts have found decisions interpreting either provision as persuasive in interpreting the other. *See In re Wages*, 479 B.R. 575, 579 n.8 (Bankr. D. Idaho 2012), *aff'd*, 508 B.R. 161, 164 n.6 (B.A.P. 9th Cir. 2014).

9

*only* security for the debt (ECF No. 21 ¶ 6).[4] Brooks points to *Kimbell* as the sole source of authority for that proposition. Wells Fargo has not mentioned the issue, even in passing. A majority of courts have rejected Brooks's suggestion, holding that a creditor's security interest in the rents of a debtor's primary residence does not remove that creditor from the class of secured creditors protected by § 1322(b)(2). *See, e.g.*, *In re Mayer-Myers*, 345 B.R. 127, 130 (Bankr. D. Vt. 2006). The *Mayer-Myers* court looked to § 9-109 of Vermont's Uniform Commercial Code ("UCC"), which excluded from the scope of secured transactions in personalty "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder." *Id*. The language of New York's Uniform Commercial Code § 9-109(d)(11) is identical to the Vermont statute. That identical language of UCC § 9-109 led the *Mayer-Myers* court to conclude that "to the extent a mortgagor conveys a security interest in rents with a security interest in the underlying land, the rents are but an additional aspect of the security interest in the land and not an additional, distinct piece of collateral." *Id*. at 130-31. For purposes of § 1322(b)(2), no "additional" security interest has been given to Wells Fargo by Brooks because the assignment of rents is incidental to the interest held in the real property. *See id*. (citing *Allied Credit v. Davis (In re Davis)*, 989 F.2d 208, 213 (6th Cir. 1993); *In re French*, 174 B.R. 1, 7 (Bankr. D. Mass. 1994); *In re Spano*, 161 B.R. 880, 887 (Bankr. D. Conn. 1993); *Wright v. C & S Family Credit,*

---

[4] It requires a very generous reading of Brooks's motion to find even the ghost of an argument that the assignment of rents clause in the mortgage constitutes "other" security for purposes of 11 U.S.C. § 1322(b)(2). Its mention is like a passing comment about the Rochester weather always being 18% grey—not to be taken too seriously. The memorandum of law submitted by Brooks doesn't even mention the assignment of rents as an issue. In order to avoid a claim that the Court overlooked this most subtle of arguments, the Court will deal with the issue head-on.

Case 2-15-21393-PRW    Doc 41    Filed 04/15/16    Entered 04/15/16 13:05:02    Desc Main
Document      Page 10 of 12

*Inc. (In re Wright)*, 128 B.R. 838, 843 (Bankr. N.D. Ga. 1991)). As a result, the second *Wages* element has been met. The Property is the only security for the debt.

That leaves only the last *Wages* element—whether the real property is Brooks's principal residence. If it is, Brooks may not modify the Wells Fargo claim secured by her Property. In her Affidavit, Brooks acknowledges that she has made the Property her principal residence since its purchase in 1998 and she still does—she owns no other real estate (ECF Nos. 1 and 37). This Court adopts the objective bright-line rule articulated by the *Macaluso* and *Wages* courts in applying § 1322(b)(2) to property that serves as a debtor's principal residence and includes other rental units—"either a property is a debtor's principal residence or it is not; the existence of other uses on the property does not change that." *Wages*, 479 B.R. at 580. Section 1322(b)(2) "requires the real property be used as a debtor's principal residence; it does not require the real property be used *solely* as the debtor's principal residence, or be deemed the debtor's principal residence . . . in light of the totality of the circumstances." *Utzman v. Suntrust Mortg., Inc.*, No 15-cv-04299-RS, 2016 U.S. Dist. LEXIS 26341, at *6 (N.D. Cal. Mar. 1, 2016) (Seeborg, J.). "[T]he fact that [the debtor] could rent out a small portion of the property does not defeat the application of the exception [under § 1322(b)(2) or 1123(b)(5)]." *Id*. at *22. As a result, the third *Wages* element has been met—the real property is Brooks's principal residence for purposes of § 1322(b)(2).

The Court holds that the anti-modification exception under 11 U.S.C. § 1322(b)(2) applies to any loan secured only by real property that the debtor uses as a principal residence, even if that real property also serves additional purposes.

## IV.

## CONCLUSION

Wells Fargo's mortgage is protected by 11 U.S.C. § 1322(b)(2) and may not be stripped-down. Brooks's motion to modify the mortgage is in all respects **DENIED**. Brooks's additional request for valuation of the Property under 11 U.S.C. § 506(a) is not ripe for determination at this time—as the parties acknowledge in their submissions. Additionally, Brooks's motion is not supported by any reliable evidence of value. Brooks's motion to value the Property under 11 U.S.C. § 506(a) is **DENIED** without prejudice.

IT IS SO ORDERED.

DATED: April 15, 2016 _____/s/_____
      Rochester, New York      HON. PAUL R. WARREN
                                         United States Bankruptcy Judge